IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38139

STATE OF IDAHO,                                          )
                                                        )
    Plaintiff-Respondent,                              )          Boise, June 2012 Term
                                                        )
v.                                                      )          2013 Opinion No. 2
                                                        )
DANIEL RYAN STRAUB,                                     )          Filed: January 7, 2013
                                                        )
    Defendant-Appellant.                               )          Stephen W. Kenyon, Clerk
                                                        )

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

District court decision on restitution, <u>reversed</u> and <u>remanded.</u>

Hon. Sara B. Thomas, Idaho State Appellate Public Defender, Boise, for appellant.  Sarah E. Tompkins, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Lori Anne Fleming, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

This case comes before this Court on an appeal from the district court's order of restitution against Daniel Straub (Straub).  Straub pleaded guilty to vehicular manslaughter, and as part of the plea, agreed to pay restitution for victims under I.C. § 18-4007 and I.C. § 19-5304.  After a restitution hearing, the district court determined that Straub owed $554,506.67 to the decedent's surviving family, primarily for future medical insurance premiums and for five years of lost wages.  We reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2009, Straub, while driving his pick-up truck, struck and killed a bicyclist, David Webster (Decedent).  The Decedent was survived by his wife (Charlene), a minor child, and a son over the age of eighteen.  A blood draw taken after the accident showed Straub to have a .08 BAC.  In the Information, Straub was charged with a felony for driving a motor vehicle

1

under the influence of alcohol, which was a significant cause contributing to the Decedent's death in violation of I.C. § 18-4006(3)(b). In the alternative, Straub was charged with gross negligence in the commission of an unlawful act in violation of I.C. § 18-4006(3)(a).

As part of the preliminary matters, the district court denied Straub's motion to suppress the blood testing evidence. A jury trial was set for April 6, 2010, but was reset for June 22, 2010. On June 17, 2010, Straub signed a guilty plea agreement, pleading guilty to "vehicular manslaughter per gross negligence." In exchange, the State agreed to recommend that Straub receive a jail term of three to eight years, a fine to be determined by the district court, and be ordered to pay restitution for crime victims pursuant to I.C. §§ 19-5304 and 18-4007. The plea also had a provision that:

> By accepting this offer the Defendant waives his right to appeal any issues regarding the conviction, including all matters involving the plea or sentencing and any rulings made by the court, including all suppression issues. Excepting however the Defendant may appeal the sentence if the Court exceeds the State's sentencing recommendation of the 'Jail/Prison terms' set forth above.

A hearing on restitution was held on August 9, 2010, and the district court issued its Memorandum Opinion Re: Restitution on August 20, 2010. In its decision, the district court ordered Straub to pay: $23,809.47 for funeral, counseling, and medical insurance premiums paid to date plus legal expenses; $530,697.20 for future medical insurance premiums and lost wages; and additional counseling costs determined pursuant to a separate order. An Order of Restitution totaling $554,506.67 was entered by the district court on August 27, 2010. At the August 23, 2010 sentencing hearing, Straub was sentenced to eight years in jail, three years fixed, and a $5,000 fine in addition to the previously determined restitution.

Straub filed an Objection to Order of Restitution on September 3, 2010. In it, Straub argued that the district court unreasonably or illegally interpreted the restitution statutes. After a hearing on the issue, the district court denied Straub's objection on September 17, 2010. Straub timely filed a Notice of Appeal on October 4, 2010.

## II. ISSUES ON APPEAL

1. Whether Straub waived his right to appeal the district court's restitution order.
2. Whether the district court abused its discretion by ordering Straub to pay restitution for the victim's lost wages.

**III. STANDARD OF REVIEW**

"The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence." *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Kinney v. Tupperware Co.,* 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). "A plea agreement is contractual in nature, must be measured by contract law standards, and as a question of law, this Court exercises free review." *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006) (citing *Dunlap v. State,* 141 Idaho 50, 63, 106 P.3d 376, 389 (2004)). Additionally, "[s]tatutory interpretation is a question of law over which this Court exercises free review." *State v. Stover*, 140 Idaho 927, 929, 104 P.3d 969, 971 (2005).

**IV. ANALYSIS**

**A. Straub did not waive his right to appeal the district court's restitution order.**

Although Straub's only issue on appeal is whether the district court abused its discretion when it awarded restitution, the State argues that by signing the guilty plea Straub waived his right to appeal the issue. Straub's guilty plea contained the following term:

> By accepting this offer the Defendant waives the right to appeal any issues regarding the conviction, including all matters involving the plea or sentencing *and any rulings made by the court*, including all suppression issues. Excepting however the Defendant may appeal the sentence if the Court exceeds the State's sentencing recommendation of the 'Jail/Prison terms' set forth above.

(Emphasis added.). A defendant may waive his right to appeal as part of a guilty plea agreement. "The prosecuting attorney and the attorney for the defendant . . . may engage in discussions with a view toward reaching an agreement, which may include a waiver of the defendant's right to appeal the judgment and sentence of the court . . . ." I.C.R. 11(f)(1).

> The law has long since recognized that a criminal defendant by pleading guilty waives certain constitutional rights including, the privilege against self-incrimination.
>
> . . .
>
> The right to appeal is purely a statutory right and is not a right guaranteed by any provision of the federal or state constitutions. Given the fact that constitutional rights may be waived, there is no doubt that a statutory right may be waived as well.

*State v. Cope*, 142 Idaho 492, 496, 129 P.3d 1241, 1245 (2006) (quoting *State v. Murphy,* 125 Idaho 456–57, 872 P.2d 719–20 (1994)).

3

On appeal, Straub does not appeal the waiver itself, but rather the scope of that waiver. Straub argues in his reply brief that any waiver of rights "would not encompass his right to appeal from the district court's restitution order" since restitution proceedings are not part of a defendant's sentence. This Court has previously held that an order for restitution is separate and apart from a criminal sentence. *See State v. Gomez*, 153 Idaho 253, __, 281 P.3d 90, 95 (2012); *see also State v. McCool*, 139 Idaho 804, 806, 87 P.3d 291, 293 (2004) (An "order of restitution provided in Idaho Code § 19-5304(2) becomes, in essence, a civil judgment for the amount of such restitution."). In the instant case, Straub not only waived his right to appeal any matters involving sentencing, but also "any rulings made by the court." The phrase "any rulings" in this context would include any ruling related to restitution, which is determined by the trial court in a separate written order. *See* I.C. § 19-5304(2).

However, the word "made," as the past tense form of the verb "to make," refers to any rulings that the district court made prior to the agreement. Thus, the agreement neither contemplates nor has any effect on rulings that occurred after the plea agreement was reached. Since the restitution hearing and subsequent restitution order occurred after the plea agreement was signed, Straub has not waived his right to appeal the restitution order.

a.    *Whether the district court violated Straub's right to a jury trial as outlined in Article 1, § 7 of the Idaho Constitution.*

As an additional basis for appeal, Straub argues that the damages ordered by the district court should properly be determined in civil court by a jury. In support, he cites Article 1, § 7 of the Idaho Constitution, which reads in pertinent part:

> The right of trial by jury shall remain inviolate . . . . A trial by jury may be waived in all criminal cases, by the consent of all parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law.

The constitutional right of trial by jury has been interpreted by this Court to secure that right as it existed at common law when the Idaho Constitution was adopted. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999). Additionally, the right to a jury trial is not necessarily applied "to new or different rights or remedies, not in existence or in contemplation of the Constitution when adopted." *Brady v. Place*, 41 Idaho 747, 751, 242 P. 314, 315 (1925).

The view that criminal restitution is a civil issue to be decided by a jury fails for two reasons. First, if criminal restitution has its roots in equity, *see United States v. Barnette*, 10 F.3d

4

1553, 1556 (11th Cir. 1994), "[i]t is generally recognized that the constitutional right to a jury trial applies only to legal claims and not equitable claims," *Ada Cnty. Highway Dist. v. Total Success Investments, LLC*, 145 Idaho 360, 369, 179 P.3d 323, 332 (2008). Second, many states–Idaho included—have adopted criminal restitution statutes through legislation. Idaho Code section 19-2601, which was enacted in 1972, authorizes trial courts to impose "probation under terms and conditions as the court deems necessary and expedient." This Court has held that under I.C. § 19-2601, "the payment of court costs and restitution are . . . proper and often very useful conditions of withheld judgments and probation." *State v. Wagenius*, 99 Idaho 273, 279–80, 581 P.2d 319, 325 (1978).

Idaho Code Section 19-5304, adopted in 1984, establishes the procedure through which the courts order restitution to crime victims regardless of whether the criminal is punished with probation or jail time. This statute expands on the 1972 statute and allows for an independent order of restitution.

> The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate.

I.C. § 19-5304(7). Through a plain reading of the statute, the trial court is given the discretion to determine a restitution order independent of probation or withheld judgment. Additionally, it is clear from the statutory language that the court's power to order restitution is limited to that provided by the statute. "[I]f a court orders restitution in the judgment of conviction and in a separate written order, a defendant shall not be required to make restitution in an amount beyond that authorized by this chapter." I.C. § 19-5304(2).

Subsequent to the enactment of these two statutes, both of which allow a court to award restitution without a jury trial, the legislature and citizens ratified Idaho Constitution article 1, section 22. This section provides a constitutional guarantee of the rights created by statute for victims of crime, and states that victims are entitled "[t]o restitution, as provided by law, from the person committing the offense that caused the victim's loss." Idaho Const. art. I, § 22. In Idaho, only the legislature has the power to make law. Idaho Const. art. II, § 1; *see also Mead v. Arnell*, 117 Idaho 660, 664, 791 P.2d 410, 414 (1990). As evidenced by the language in I.C. § 19-2601 and I.C. § 19-5304, the legislature has not extended the right to jury trial in matters of criminal restitution.

5

The provisions of article 1, section 22 do not conflict with the right to jury found in article 1, section 7. "Only when an irreconcilable conflict exists will the court resort to methods of statutory or constitutional interpretation which would have one provision prevail over another." *Idaho Power Co. v. State, By & Through Dept. of Water Res.*, 104 Idaho 570, 573, 661 P.2d 736, 739 (1983). Since we have interpreted article 1, section 7 as a protection of the right to jury trial as that right existed when the Idaho Constitution was adopted, and since article 1, section 22 amendment codified rights that post-date this adoption, the lack of a jury provision in section 22 does not conflict with section 7.

As noted above, neither I.C. § 19-5304 nor article 1, section 22 of the Idaho Constitution expressly mention a right to trial by jury. The legislature intended that the statutory framework previously adopted in 1984 was the scheme "as provided by law" referenced to in the specific victim's rights constitutional amendment as written in article 1, section 22. Therefore we hold that the constitutional right to a jury trial does not apply to criminal restitution claims.

**B. The district court abused its discretion by ordering Straub to pay restitution for the victim's lost future wages.**

Since Straub did not waive his right to appeal a restitution decision, it is necessary to analyze whether the district court abused its discretion when it ordered Straub to pay restitution for the victim's lost future wages.

In his plea agreement, Straub agreed to pay restitution for crime victims under I.C. §§ 19-5304 and 18-4007. In its Memorandum Decision, the district court awarded restitution for medical expenses paid and for lost wages under I.C. § 19-5304, but declined to award child support restitution under I.C. § 18-4007(3)(d). More specifically, the district court awarded restitution in three distinct categories. The first category included $8,460.87 for funeral costs, legal expenses,[1] and counseling incurred to date. The second category dealt with the Websters' expenses in securing three years of medical insurance coverage; coverage that was previously provided through the Decedent's employer. The district court ordered restitution of $15,348.60 for the twelve months of medical insurance premiums paid to date, and $30,697.20 for the balance of already purchased future medical insurance premiums. Finally, the district court awarded $500,000 for "lost wages" on the basis of "undisputed evidence presented at hearing."

---

[1] On these legal expenses, Charlene testified that she hired a lawyer to represent the decedent "legally in the changing of the accounts through the benefits at his employment." In her testimony, Charlene stated that these expenses are a direct result of Straub's actions, but are not directly related to this legal action.

6

The district court held that I.C. § 19-5304(1) would allow Charlene to receive her community share of the Decedent's anticipated income of one million dollars over the next five years, but noted that it was aware of no Idaho cases that have interpreted the lost wages portion of the statute. In support, the district court cited a case from the California Supreme Court, *People v. Giordano*, 170 P.3d 623 (Cal. 2007). In *Giordano*, the court determined that the California restitution statute allowed a surviving spouse to receive lost economic support for the next five years as a restitution award. *Id.* at 632.[2]

On appeal, Straub argues that some of these damages are not authorized by the relevant Idaho statutes and must be vacated. According to Straub, "[d]amages to a surviving spouse for a decedent's lost future wages falls squarely in the realm of wrongful death damages, and recovery of these damages in criminal restitution proceedings is expressly precluded by statute." On this point, Straub believes that the $530,697.20 awarded for future medical insurance premiums and future lost wages was improper.

"The interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (internal quotation omitted). The statute at issue is not ambiguous. Idaho Code section 19-5304(2) states that:

> Unless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim. An order of restitution shall be a separate written order in addition to any other sentence the court may impose, including incarceration, and may be complete, partial, or nominal. The court may also include restitution as a term and condition of judgment of conviction; however, if a court orders restitution in the judgment of conviction and in a separate written order, a defendant shall not be required to make restitution in an amount beyond that authorized by this chapter. Restitution shall be ordered for any economic loss which the victim actually suffers.

Victim is defined as "[t]he directly injured victim . . . who suffers economic loss or injury as the result of the defendant's criminal conduct and shall also include the immediate family of a

---

[2] The holding in *Giordano* is based upon Cal. Penal Code § 1202.4(f) which allows restitution to crime victims for economic loss. The statute defines economic loss to include: "wages or profits lost by the victim"; medical expenses; mental health counseling expenses; and "[n]oneconomic losses, including but not limited to, psychological harm . . . ." Cal. Penal Code § 1202.4(f).

minor and the immediate family of the actual victim in homicide cases." I.C. § 19-5304(1)(e). Manslaughter is included in the category of homicide cases. *See State v. Ellington*, 151 Idaho 53, 65, 253 P.3d 727, 739 (2011).

Economic loss is defined by the statute as including, but not limited to:

> the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress.

I.C. § 19-5304(1)(a).

The State argues that "I.C. § 19-5304 does not categorically bar the recovery of restitution for any damages that would be recoverable in a wrongful death suit" and that the statute is intended to prevent recovery of non-economic wrongful death losses while allowing recovery of economic losses. A plain reading of the statute supports the State's argument. The statute allows for restitution of any actual economic loss that results from the defendant's criminal conduct. I.C. § 19-5304(2). Such an award can include lost wages and any expenses including medical costs. I.C. § 19-5304(1)(a). Idaho Code section 19-5304(1)(a) contains the phrase "includes, but is not limited to," and when taken together with the provision in I.C. § 19-5304(2) that allows restitution for "any economic loss which the victim actually suffers," would allow lost economic support if it is a tangible out-of-pocket loss. The phrase "out-of-pocket" is defined as "consisting of or requiring an actual cash outlay." *Webster's Third New International Dictionary, Unabridged Edition* (1971). In addition, the statute clearly defines as victims the immediate family of the actual homicide victim. I.C. § 19-5304(1)(e). The statute also expressly excludes less tangible damages that may be available in a wrongful death action, such as emotional distress damages, *See Horner v. Sani-Top, Inc.*, 143 Idaho 230, 237–38, 141 P.3d 1099, 1106–07 (2006), or the loss of comfort, society, and companionship, *See Volk v. Baldazo*, 103 Idaho 570, 573, 651 P.2d 11, 14 (1982).

Given the above analysis, we hold that actual out-of-pocket medical expenses and lost wages up to the date of sentencing may be included in a restitution order consistent with the language of I.C. § 19-5304.

1. Whether the restitution award was based on evidence that was too speculative.

Although the statutes allow the type of restitution awarded by the court, Straub also argues that the district court abused its discretion by awarding restitution speculatively in

violation of I.C. § 19-5304.  According to Straub, the district court awarded "less tangible" lost wage damages based only on Charlene's testimony that the Decedent planned to work for the foreseeable future.  The State also offered the Decedent's 2008 tax forms as support.  In the briefs and in oral argument, the parties presented differing interpretations on the meaning of the phrase "less tangible" in I.C. § 19-5304(1)(a).

The State argues that within the context of the statute, the phrase "less tangible" encompasses a narrow category of losses.  In support, the State cites an interpretation of I.C. § 19-5304 from the Idaho Court of Appeals opinion *State v. Higley*, 151 Idaho 76, 253 P.3d 750 (Ct. App. 2010).  In *Higley*, the Court of Appeals held that "the statute disallows restitution for noneconomic damages that might be available in a civil lawsuit, such as pain and suffering, wrongful death, emotional distress, and the like." *Id*. at 78, 253 P.3d at 752.

However, Straub also argued that the restitution order was speculative and without enough evidence.  In the civil context, damages for lost future earnings must be shown by a reasonable certainty.  *See Bailey v. Sanford*, 139 Idaho 744, 751, 86 P.3d 458, 465 (2004).  But the restitution statute provides its own standard.  Idaho Code section 19-5304(6) states that:

> Economic loss shall be based upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim or presentence investigator. Each party shall have the right to present such evidence as may be relevant to the issue of restitution, and the court may consider such hearsay as may be contained in the presentence report, victim impact statement or otherwise provided to the court.

Additionally, I.C. § 19-5304(2) states that "[r]estitution shall be ordered for any economic loss which the victim actually suffers."  Webster's Dictionary defines the word "actually" as something "existing in fact or reality" and in contrast with the words "potential and possible." *Webster's Third New International Dictionary, Unabridged Edition* (1971).

As mentioned above, "[t]he district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence." *Corbus*, 150 Idaho at 602, 249 P.3d at 401.  Here, the undisputed evidence before the trial court indicated the Decedent's income, future employment plans, and his health.  The evidence also clearly showed the economic costs of medical insurance.

In making its decision on lost economic support, the district court relied on two pieces of evidence.  First, the district court used the Decedent's 2008 tax return to determine that he made $204,355.68 in gross wages that year.  Charlene testified that the Decedent was in good health, and in her opinion, would likely work for "many, many years."

9

However, the evidence regarding lost future wages is a speculative, rather than an actual economic loss. The district court's award of future wages would be based on speculation and distinguishable from the award in *Higley*. In *Higley* the award for lost wages was based on a quantifiable loss that occurred in the interim between the crime and the restitution award. 151 Idaho at 79–80, 253 P.3d at 753–54. So while the Court of Appeals awarded lost wages as part of a restitution award, these wages were neither speculative nor prospective. Additionally, the award appeared to cut wages off to the time of sentencing. Here, the lost wages included in the restitution order are based on the possible future wages of the Decedent. Such possible future wages would be inapposite to "actually suffered" economic loss as contemplated in the statute. While lost wages are allowed under statute, awarded wages are limited to the quantifiable out-of-pocket losses at the time of the restitution award.

On the award of future medical insurance premiums, Straub specifically disputes the $30,697.20 for "anticipated insurance premiums." According to the district court, these future premiums are not based on speculation. The premiums are for continuation of the COBRA health coverage program that the Websters' purchased after the accident but before the restitution hearing. However, there is a distinction between medical expenses and medical insurance. Medical expenses are expressly included in the definition for economic loss in I.C. § 19-5304(1)(a) if they are a direct result of the criminal conduct. In contrast, the acquisition of medical insurance does not directly correlate as a direct consequence of the criminal conduct. Although it is foreseeable that the death of the lone family breadwinner would leave the family without health insurance, foreseeability does not equal a "direct" result.

The restitution statute was never meant to be a substitute for a civil action where the law is settled as to damages and the quantum of admissible proof needed to prove those damages. If we allow all foreseeable damages to be clothed in criminal restitution, we will draw to a standstill an already overburdened criminal court process. Prosecutors and criminal defense attorneys would then have to engage in civil discovery and trials of a civil nature on top of already complex criminal procedure and trials. Since the restitution order awarded speculative future wages and other expenses rather than direct out-of-pocket expenses actually suffered we find that the restitution order is not consistent with I.C. § 19-5304. We vacate the order of restitution and remand to the district court.

10

## V. CONCLUSION

We find that Straub did not waive his right to appeal the restitution order when he signed the guilty plea agreement. We also find that the district court award of future economic support or lost wages was not consistent with I.C. § 19-5304. We remand to the district court for further proceedings consistent with this decision.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**