IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39577

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 620 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 8, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SAIYOTH TOM CHONGPHAISANE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Order awarding restitution, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

GUTIERREZ, Chief Judge

Saiyoth Tom Chongphaisane appeals from the restitution order imposed following his judgment of conviction for possession of methamphetamine. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

After police executed a search warrant at a residence where Chongphaisane was found with drugs, he was charged with one felony count of possession of a controlled substance (methamphetamine), Idaho Code § 37-2732(c); one misdemeanor count of possession of a controlled substance, I.C. § 37-2732(c); and one misdemeanor count of possession of drug paraphernalia, I.C. § 37-2734A. Pursuant to a plea agreement, Chongphaisane pled guilty to the felony charge in exchange for dismissal of the misdemeanors, a specific sentencing recommendation from the State, and the State's agreement not to file a sentencing enhancement.

1

The State retained the right to request restitution. Prior to sentencing, the State was released from the plea agreement's restrictions after new charges were filed against Chongphaisane.

At the sentencing hearing, the State submitted its initial restitution request of $3018.21 for the costs of the investigation, to be paid to the Idaho State Crime Lab and the Boise Police Department (BPD). Chongphaisane objected to the amount requested by the BPD, which comprised all but $100 of the restitution request and included requests for reimbursement for hours spent by nine BPD employees on the case. At the restitution hearing, held in February 2012, two BPD employees, Officer Steve Keely and Technician Laura Weddle,[1] testified in support of the State's request. Officer Keely testified he spent approximately twenty-five hours investigating Chongphaisane's criminal activity and that his rate of pay was approximately $38 an hour (which Weddle later testified did not include benefits). The State introduced Exhibit 1 through Weddle, who prepared the document: it listed each BPD employee who worked on the investigation, the number of hours they had done so, and the total restitution amount requested by the BPD. It did not list the employees' individual rates of pay. Weddle testified she calculated the restitution amount after collecting the number of hours worked on the investigation from the participants; identifying which hours qualified as overtime; and then, requesting the employees' "rate of pay and benefits" applicable to the time the search took place. She then multiplied the hours spent on the investigation by the employees' applicable rate of pay, which, for the purposes of the restitution request, included the cost of benefits received by the employees. If the hours worked were considered overtime, the calculation was increased to time and a half. Weddle testified her rate of pay, including benefits, was $20 an hour. Neither she nor Officer Keely testified to the rate of pay for the other employees listed in the restitution request. The State then rested.

In argument at the conclusion of the restitution hearing, Chongphaisane pointed out that the State provided no evidence of the rate of pay for any of the BPD employees besides Officer Keely and Weddle; therefore, he argued, there was insufficient evidence to award restitution for those employees. The State agreed it did not elicit testimony from Weddle concerning the employees' specific rate of pay, but pointed out it did ask Weddle how she calculated the amounts requested. The State asked that, if the district court did not believe the evidence was

---

[1]     Weddle testified she assisted with crime scene investigation responsibilities and was responsible for compiling the time sheets used to request restitution for investigations.

2

sufficient, it be allowed to reopen its case. Without discussion, the court allowed the case to be reopened, and the State again called Weddle, who testified she did not have the officers' rates of pay with her, but approximated the rates based on a comparison with Officer Keely's rate of pay. The district court took the matter under advisement.

Several days after the hearing, the State submitted an affidavit from Weddle wherein she included the rates of pay (including benefits) for the remaining employees. Chongphaisane objected to the court's consideration of the affidavit on the grounds that it was untimely because the State had rested its case and because it violated his constitutional rights to confront an adverse witness. Although Chongphaisane indicated he did not want a hearing, the district court scheduled a hearing to allow Chongphaisane to cross-examine Weddle regarding her statements in the affidavit. The court also indicated it would include the time Weddle spent at the hearing in the restitution award. Chongphaisane strenuously objected. The hearing was held, but Chongphaisane declined to question Weddle. On March 26, Weddle submitted a second affidavit listing the time spent by Officer Keely and herself at the two restitution hearings, their rate of pay, and the resulting additional amount of restitution requested.

The district court entered a written order of restitution, indicating, in relevant part, it was within its discretion to reopen the matter and take additional evidence, even on its own motion, and that benefits could be included in the restitution amount. It awarded $2,918.21 to the BPD and $100 to the Drug Enforcement Donation Account.[2] Chongphaisane timely appealed.

## II.

## ANALYSIS

### A. Inclusion of Benefits

Chongphaisane contends the district court erred by including benefits as a part of law enforcement personnel's hourly pay rate in the restitution award. He argues the restitution amount should have been limited to the employees' "regular" salaries. Courts of criminal jurisdiction generally have no authority to order restitution in a criminal case beyond that authority conferred by statute. *See, e.g., State v. Gonzales*, 144 Idaho 775, 777, 171 P.3d 266, 268 (Ct. App. 2007); *State v. Cheeney*, 144 Idaho 294, 296, 160 P.3d 451, 453 (Ct. App. 2007). Where statutory authority exists, the decision whether to order restitution is a matter of trial court

---

[2] The district court apparently did not include restitution for the time spent at the restitution hearings by Officer Keely and Weddle.

3

discretion, but a restitution order made without a statutory basis is not a permissible exercise of judicial discretion. *State v. Aubert*, 119 Idaho 868, 869, 811 P.2d 44, 45 (Ct. App. 1991), *overruled on other grounds by State v. Schultz*, 148 Idaho 884, 231 P.3d 529 (Ct. App. 2008). This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

The statute under which restitution was ordered in this case, Idaho Code § 37-2732(k), provides in relevant part:

> Upon [a qualifying conviction], the court may order restitution for costs incurred by law enforcement agencies in investigating the violation. . . . Costs shall include, but not be limited to, those incurred for the purchase of evidence, travel and per diem for law enforcement officers and witnesses throughout the course of the investigation, hearings and trials, and any other investigative or prosecution expenses actually incurred, including regular salaries of employees.

Chongphaisane argues the cost of benefits cannot be included in the employees' rate of pay because the statute mentions only "regular salaries" and, therefore, it "inherently limit[s] the types of pay that [can] be recouped under this code section because '[i]t is a universally recognized rule of construction that, where a constitution or statute specifies certain things, the designation of such things excludes all others.'" (Citations omitted.) He also asserts that the benefits the State requested in this case are accrued by the employee independent from the hours the employee works and, thus, were not incurred as a result of the investigation into the specific violation by Chongphaisane and cannot be included in a restitution award.

The district court rejected this argument, noting Chongphaisane did not cite any legal basis for his contention that the cost of benefits should be excluded because they "would have been paid anyway." The court noted the employees' salaries would also have been "paid anyway" regardless of the investigation and, thus, this reasoning is not a valid basis to exclude it from restitution. The court found the statute is "comprehensive and salaries include benefits,"

4

only limiting the court's discretion to costs incurred during the course of the investigation and related proceedings.

Chongphaisane's argument--that, based on statutory rules of construction, benefits are necessarily excluded because the statute only mentions "regular salaries"--fails to account for a principle underlying our interpretation of statutes: if, based on its plain language, the statute is not ambiguous, this Court does not engage in statutory construction, but simply follows the law as written. *State v. Straub*, 153 Idaho 882, 888, 292 P.3d 273, 279 (2013). Chongphaisane does not argue the statute is ambiguous, and we do not believe that it is. Section 37-2732(k) clearly allows for restitution for the "costs incurred by law enforcement agencies in investigating the violation" and indicates several examples of "costs," including "regular salaries," but also states the list is not exhaustive by noting that recoverable costs "*shall include, but not be limited to*" the enumerated costs. (Emphasis added.) Thus, the plain language of the statute allows for recovery of the costs of investigation even if they are not specifically enumerated in the statute.

This reading of the statute is consistent with our Supreme Court's interpretation of the general criminal restitution statute, Idaho Code § 19-5304, which provides for restitution for any actual economic loss resulting from the defendant's criminal conduct:

> '[E]conomic loss' *includes, but is not limited to*, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress.[3]

(Emphasis added.) In *Straub*, 153 Idaho at 888-89, 292 P.3d at 279-80, the defendant pled guilty to vehicular manslaughter and was ordered, under section 19-5304, to pay the decedent's wife the decedent's future lost earnings and future medical insurance premiums. On appeal, the defendant argued those damages were not authorized by section 19-5304 because they fell "squarely in the realm of wrongful death damages" and the recovery of such damages in a criminal restitution proceeding is expressly precluded by the statute. The State argued the statute does not categorically bar the recovery of restitution for any damages that would be recoverable

---

3       The Supreme Court has noted that Idaho Code § 37-2732(k) "is short on specific guidance regarding the nature of a restitution award or the procedure to obtain such an award" and, therefore, it has looked to the general restitution statute, Idaho Code § 19-5304, for "guidance." *State v. Gomez*, 153 Idaho 253, 258, 281 P.3d 90, 95 (2012).

in a wrongful death suit. The Court found the statute was not ambiguous and agreed that a plain reading of the statute supported the State's argument. Specifically, the Court noted that subsection (1)(a) of section 19-5304 contains the phrase "includes, but is not limited to," and when taken together with the provision in subsection (2) of section 19-5304, which allows restitution for "any economic loss which the victim actually suffers," the statute would allow for restitution of lost economic support if it is a tangible out-of-pocket loss. *Straub*, 153 Idaho at 889, 292 P.3d at 280.[4] *See also People v. Williams*, 108 Cal. Rptr. 3d 772, 775 (Cal. Ct. App. 2010) (stating, without engaging in statutory construction, that where a restitution statute allows for the recovery of "economic loss" and uses the language "*including, but not limited to*" before enumerating eleven categories of loss that a victim can recover, it "strongly indicates that the categories listed in the statute were not intended to be exclusive").

Given that the plain language of section 37-2732(k) is not ambiguous, we will not engage in the statutory construction Chongphaisane urges automatically excludes benefits in a restitution award. Because the text of the statute clearly allows for recovery outside the enumerated categories, we turn to Chongphaisane's second argument--that benefits do not qualify as "costs incurred by law enforcement agencies in investigating the violation" such that they may be included in a restitution award under this statute because BPD employees receive the benefits "regardless of which case they investigate at a particular time or how long they work on that investigation." The BPD's loss in this regard is not caused by Chongphaisane's criminal conduct, he argues, because the "State will suffer that loss regardless of who or what the officer investigates or how long he investigates."

Chongphaisane's argument is based on Weddle's testimony at the restitution hearing:

| [Defense counsel]: | So $42 an hour for Officer Keely includes all of the benefits? |
|---|---|
| [Weddle]: | Yes, that's correct. |
| [Defense counsel]: | And those benefits are made to him regardless of exactly who investigates or what he investigates; correct? |
| [Weddle]: | True. |
| [Defense counsel]: | And his benefits are paid to him regardless whether he works overtime or not; correct? |

---

[4]    Irrelevant to the issue we address here, the *Straub* Court ultimately concluded the evidence regarding lost future wages was speculative, rather than an actual economic loss, and barred restitution for lost future wages. *State v. Straub*, 153 Idaho 882, 890, 292 P.3d 273, 281 (2013).

6

| [Weddle]: | True. |
| [Defense counsel]: | And that would be true of you as well; right? |
| [Weddle]: | Yes. |

As the district court pointed out, the defect in Chongphaisane's argument is that the same is true in regard to salaries paid to BPD employees. Regardless of whether the employees were investigating Chongphaisane's case, or another case, the employees would receive their salary *and* benefits. Thus, benefits are not any more divorced from the actual investigation in this case than salaries. Mindful of this consideration, and the policy underlying the general criminal restitution statute that favors full compensation to crime victims who suffer economic loss, *see State v. Richmond*, 137 Idaho 35, 38, 43 P.3d 794, 797 (Ct. App. 2002), we do not think it is appropriate to distinguish the cost of benefits conferred from the salaries paid to employees when calculating restitution pursuant to section 37-2732(k). *Accord In re Johnny M.*, 123 Cal. Rptr. 2d 316, 320 (Cal. Ct. App. 2002) (holding that restitution ordered paid to a school the defendant vandalized for labor costs, including benefits, of salaried employees who repaired the damage was appropriate where the school was deprived of the employees' work product during the time spent effecting repairs). Accordingly, the district court did not err in including benefits in the restitution award.

## B. Sufficiency of the Evidence

Chongphaisane also contends the State failed to present sufficient evidence to support the restitution award. Specifically, he argues the State only properly presented evidence of the hours worked *and* the rate of pay for Officer Keely and Weddle, but even that evidence was speculative because it was only an approximation. He also argues there was no evidence properly presented as to the rate of pay for the remaining employees because the district court abused its discretion in reopening the case at the conclusion of the hearing to allow the State to recall Weddle and to submit two affidavits from Weddle, which included the rate of pay for each employee. We need not address whether the district court erred in reopening the case and allowing the State to present additional evidence because, assuming the district court did err in doing so, even without this evidence, there was sufficient evidence to support the restitution award as to all employees.

The trial court must base the amount of restitution to be awarded upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim, or presentence

investigator. *State v. Smith*, 144 Idaho 687, 695, 169 P.3d 275, 283 (Ct. App. 2007). *See also* I.C. § 19-5304(6). The appropriate amount of restitution is a question of fact for the trial court, whose findings will not be disturbed if supported by substantial evidence. *State v. Taie*, 138 Idaho 878, 879, 71 P.3d 477, 478 (Ct. App. 2003); *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990).

The crux of Chongphaisane's argument on appeal is that the State did not present competent evidence of any of the employees' rate of pay, either because, in regard to Officer Keely and Weddle, the evidence presented was too speculative or because, in regard to the remaining employees, no evidence was presented of their rate of pay until after the case was improperly reopened. However, we do not accept Chongphaisane's premise that the precise rate of pay for each employee must have been admitted into evidence in order for there to be sufficient evidence to support the restitution award. As mentioned above, Exhibit 1 listed each BPD employee who worked on the investigation, the number of hours they had done so, and the total restitution amount requested by the BPD. Although the exhibit did not list the employees' individual rates of pay (and Weddle herself could not testify as to the specific rates off the top of her head), Weddle testified she calculated the restitution amounts after collecting the hours worked on the investigation, identifying which hours qualified as overtime, and multiplying those hours by the "current rate of pay [for each employee]," which she obtained from the payroll department. Chongphaisane did not raise any doubts on cross-examination regarding the accuracy of Weddle's testimony or calculations. As noted above, the amount of restitution awarded must only be supported by substantial evidence, which is such relevant evidence as a *reasonable mind* might accept to support a conclusion. *Kinney*, 117 Idaho at 769, 792 P.2d at 334. Here, it was reasonable for the district court to accept the testimony of Officer Kelly and Weddle, as well as Exhibit 1, as support for the amount of the BPD's restitution request it ultimately awarded. There is simply no requirement that every number used to arrive at a restitution calculation be introduced into evidence--it is enough that Weddle explained the source of her information and her process of calculating the amount to arrive at the total amount requested. There was sufficient evidence to support the restitution award as to each employee listed in the request.

**III.**

**CONCLUSION**

The district court did not err in including the cost of employee benefits in awarding restitution for the investigative costs incurred by the BPD. Additionally, there was sufficient evidence to support the amount of restitution awarded to the BPD. The order awarding restitution is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**